## Bracken v. Dinning.

(Decided December 15, 1910.)

### Appeal from Simpson Circuit Court.

Breach of Promise to Marry—Pleading—Evidence—Instructions—Trial—Verdict.—In an action by an unmarried woman against her professed lover to whom she was engaged when she was 20 years of age and whom she had known from her infancy, for breach of a marriage contract, the plaintiff recovered a judgment for $1,500.00 in damages. It is insisted that the jury should have been peremptorily instructed to find for the defendant because the plaintiff failed to show a promise made by one and accepted by the other. Held, there is no ground for such an instruction if plaintiff's testimony is to be believed, and her testimony was confirmed by her mother, and by certain letters from defendant which she introduced in evidence. The defendant introduced his witnesses and offered to prove by them, to impeach her character as a witness, that the character of the plaintiff and her mother was bad in Tennessee five years before the trial. They had lived in Kentucky for five years and there was no effort to show their character was bad, at the time of the trial, with those among whom they lived. He did not plead her bad character as a bar or reason why he had broken his promise. He only denied the promise. The case was fairly submitted to the jury by the instructions. She was very poor and in humble circumstances. He was a man of means and position. His mother was opposed to the marriage. Held, that the case was fairly submitted to the jury by the instructions. The court told the jury to find for the plaintiff if the contract of marriage was made or confirmed within a year before the filing of the suit, and to find for the defendant if it was not so made. This was the only issue in the case for the defendant had married another woman thereby putting it out of his power to marry her.

ROARK & FINN and SIMS & RODES for appellant.

GEO. W. WHITESIDES, C. W. MILLIKEN and J. J. MILLIKEN for appellee.

Opinion of the Court by Judge Hobson—Affirming.

Bertha Dinning brought this suit against R. P. Bracken to recover damages for the breach of a marriage contract. He filed an answer traversing the allegations of the petition, and on a trial of the case before a jury, she recovered a verdict for $1,500, on which the court entered judgment. He appeals.

It is insisted for the defendant that the court should have instructed the jury peremptorily to find for him because the plaintiff failed to show a promise made by one and accepted by the other. We do not see that there is ground for this objection, if the plaintiff's testimony is believed, and her testimony was confirmed by her mother and by certain letters which she introduced in evidence. She showed in substance that the defendant professed his love to her, that she accepted him as a suitor; that they conferred time and again as to the time of their marriage; at one time the marriage was put off at his request because he had lost a large amount of money in a bank failure. To illustrate, we quote what she says occurred then:

"He says, I reckon you know of my loss. I says no. He says, I have lost every dollar I had, says I have got nothing, but says I had rather lost what I had or much more than to lose you. He says I feel like I am rich if I have got you. I says, you have not lost me. He talked on about losing his money, and he says what is so bad is that while I was just getting in shape for us to marry, and the bank closed, and he says, I lost all I got, and he says let's put it off and get another start. He says I have got nothing now. I says all right then if you think best, and so it was put off."

At another time when she was receiving attentions from another suitor, and he objected to it, this occurred:

"He says there is one thing about it, I will not stand it any longer, I'll not put up with it, he has got to quit, and I says to Mr. Bracken, I have kept company with you about six years—I don't know just all that I did say—I think I said, I don't know what to think of you sometimes. I was sitting in an armed rocking chair before the grate, and he fell down before me on his knees, and he says wait on me one more year, and don't let anybody else come in, and make him quit, and he says you don't want to go back to the woolen mills to work, and he says if you don't want to you need not."

Being asked what was the last time fixed for them to marry, she said:

"The time he had fixed to marry was last Christmas, after he married, this last Christmas. The Christmas we were speaking of was sometime before then. I spoke of what I said to this lady friend of mine, and told him of it, and then it was this last Christmas that he said we would settle it then. He said he didn't know that we would wait until Christmas. He said he was tired of so much of this talk, and said we would just settle it."

Before Christmas came he married another. When he had married another he put it out of his power to marry the plaintiff, and she had a right to bring suit.

The defendant introduced his witnesses and offered to prove by them to impeach her character as a witness, that the character of the plaintiff and her mother were bad in Tennessee five years before the trial. They had lived for five years in Kentucky, there was no effort to show that their character was bad at the time of the trial with those among whom they lived. The offer was simply to show bad character five years before in Tennessee, without any evidence that their character was bad at the trial. Such evidence was held incompetent in Mitchell v. Commonwealth, 78 Ky., 219. The defendant did not plead her bad character as a bar or reason why he had broken his promise. He only denied the promise. He had known the plaintiff from her infancy. They became engaged to be married when she was twenty years old. She was very poor and in very humble circumstances; he was a man of means and position. His mother was opposed to the marriage. The case was fairly submitted to the jury by the instructions which were clear and explicit. The court told the jury in substance to find for the plaintiff if the contract of marriage was made or confirmed within a year before the filing of the suit, and to find for the defendant if it was not so made or confirmed. This was the only issue in the case; for it is clear from the evidence that while the plaintiff was ready and willing to marry the defendant, he had married another person, thereby putting it out of his power to marry her.

Judgment affirmed.